**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARKIAN SLOBODIAN, as Trustee for the Bankruptcy Estate of Net Pay Solutions, Inc., d/b/a Net Pay Payroll Services,** | : | **CIVIL NO. 1:13-cv-2677** |
| | : | **(Chief Judge Conner)** |
| **Plaintiff,** | : | |
| **v.** | : | |
| **THE UNITED STATES OF AMERICA, through the Internal Revenue Service,** | : | |
| **Defendant.** | : | |

**MEMORANDUM**

Presently before the court in the above-captioned adversary proceeding is the motion (Doc. 5) of the United States of America ("United States"), proceeding through the Internal Revenue Service ("IRS"), to dismiss the amended complaint (Doc. 8) filed by debtor Net Pay Solutions, Inc., d/b/a Net Pay Payroll Services ("Net Pay") through its trustee, Markian Slobodian ("trustee"), which seeks recovery of certain preferential and fraudulent transfers. For the reasons that follow, the court will grant in part and deny in part the trustee's motion.

## I. Procedural Background

On or about August 2, 2011, Net Pay filed a voluntary petition (the "Petition") under Chapter 7 of the Bankruptcy Code. *In re* Net Pay Solutions, Inc., d/b/a Net Pay Payroll Services ("*In re* Net Pay"), No. 1:11-bk-5416, Doc. 1 (Aug. 2, 2011). On June 24, 2013, Net Pay, through its trustee, filed the above-captioned adversary proceeding against the United States, through the IRS, seeking recovery of alleged

preferential transfers pursuant to 11 U.S.C. § 547 and alleged fraudulent transfers pursuant to 11 U.S.C. § 548 and various provisions of Pennsylvania law. *In re* Net Pay, No. 1:13-ap-0163, Doc. 1 (June 24, 2013). On July 30, 2013, the IRS moved to dismiss the trustee's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[1] The bankruptcy court thereafter issued an opinion and order concluding that the Supreme Court's holding in Stern v. Marshall, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011) divested bankruptcy courts of the authority to enter final judgments on the trustee's fraudulent transfer claims. Id. Docs. 13-14 (Oct. 7, 2013). The court also concluded that the trustee had failed to state a claim for a preferential transfer under 11 U.S.C. § 547 and dismissed that claim with leave to amend. Id.

On October 28, 2013, the trustee filed an amended complaint in bankruptcy court contemporaneously with a motion to withdraw the reference. Id. Docs. 17-18 (Oct. 28, 2013). The bankruptcy court thereafter transmitted the motion (Doc. 1) to this court. On November 7, 2013, the trustee filed a certificate of concurrence (Doc. 3) indicating that the IRS agreed that withdrawal is appropriate. Consequently, this court issued an order (Doc. 4) on November 8, 2013, granting the motion and withdrawing the reference of the above-captioned adversary proceeding to the bankruptcy court. On November 12, 2013, the IRS moved to dismiss the trustee's

---

[1] Rule 12(b)(6) is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012(b). FED. R. BANK. P. 7012(b) ("F. R. Civ. P. Rule 12(b)-(i) . . . applies in adversary proceedings.")

amended complaint (Doc. 8) pursuant to Rule 12(b)(6). (Doc. 5). The motion is fully briefed (Docs. 6, 10, 11) and ripe for the court's review.

## II. Standard of Review

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When the complaint fails to present a prima facie case of liability, however, courts should generally grant

leave to amend before dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116–17 (3d Cir. 2000).

## III. Material Facts

Prior to August 2, 2011, Net Pay operated a payroll service in Harrisburg, Pennsylvania. (Doc. 8 ¶ 4). Net Pay collected funds from its clients as payment for services, for funding customers' payroll, and for payment of employee withholding obligations, "including . . . trust fund taxes for the benefit of [Net Pay]." (Id. ¶ 5). Net Pay deposited all collected funds into a general operating account from which it made payments for the benefit of its customers in addition to its own operating expenses. (Id. ¶ 6). In essence, Net Pay commingled all funds and used the same account to make payments on behalf of itself and its customers. (Id.) Net Pay's expenses, paid from the shared account, included both corporate income and other tax obligations. (Id.) The trustee's preferential and fraudulent transfer claims arise from multiple sets of transfers from this account while Net Pay was insolvent.

The preferential transfer claim pertains to transfers made on May 3, 2011, by Net Pay to the IRS, in the amount of $3,000,000 (the "2011 Transfers"). (Id. ¶ 8). At the time of the 2011 Transfers, Net Pay had not satisfied its own tax obligations with the IRS. (Id. ¶ 9). As a result, the trustee asserts that the IRS was a creditor of Net Pay to the extent of Net Pay's tax obligations. (Id. ¶ 10). According to the trustee, Net Pay was contractually obligated to its customers to pay the portion of collected funds attributable to the customers' trust fund tax obligations to the IRS. (Id. ¶ 12). Because Net Pay failed to make these payments as well, the trustee

posits that its customers were also its creditors at the time of the 2011 Transfers. (Id. ¶ 13). The trustee alleges that "a portion" of the 2011 Transfers were paid on its own behalf and not on behalf of its customers. (Id. ¶ 11).

The trustee also asserts fraudulent transfer claims under both Pennsylvania law and the Bankruptcy Code. In support of its state law claim, the trustee asserts that on or after August 3, 2007, Net Pay transferred approximately $5,074,712.44 (the "Four Year Transfers") to the IRS. (Id. ¶ 23). In support of the § 548 claim, the trustee asserts that on or about August 3, 2009, Net Pay transferred approximately $4,654,220.50 (the "Two Year Transfers") to the IRS. (Id. ¶ 41). As with the 2011 Transfers, the trustee alleges that at the time of the Two and Four Year Transfers, some of Net Pay's customers were also its creditors. (Id. ¶¶ 25, 43). The trustee alleges that Net Pay made both the Two and Four Year Transfers with intent to and as a part of a scheme to hinder, delay, or defraud some or all of its customers." (Id. ¶¶ 26, 44). According to the trustee, Net Pay was insolvent at the time of each of the challenged transfers. (Id. ¶¶ 17, 31, 47).

## IV. Discussion

Pre-petition transfers of a debtor's property can be avoided under various avoidance doctrines. For example, a trustee or debtor in possession may avoid preferential transfers under 11 U.S.C. § 547 and fraudulent transfers under 11 U.S.C. § 548. Pennsylvania law similarly provides an avenue for avoidance of fraudulent transfers under 12 PA. CONS. STAT. § 5104. Net Pay's trustee, in his adversary complaint, asserts that the transfers made in 2007, 2009, and 2011 were

either preferential or fraudulent, rendering them violative of and voidable under the Bankruptcy Code and Pennsylvania law. The United States' motion tests the sufficiency of each of these claims.

**A. Preferential Transfers**

The trustee first seeks to recover the 2011 Transfers from the United States under 11 U.S.C. § 547. Section 547 permits a trustee to avoid "any transfer of an interest of the debtor in property . . . to or for the benefit of a creditor . . . for or on account of an antecedent debt owed by the debtor . . . made while the debtor was insolvent." 11 U.S.C. § 547(b)(1)-(3). The statute includes only those transfers made within 90 days after the filing date of the petition, or between 90 days and one year before the filing of the petition if the creditor at the time was an insider, and must have enabled the creditor to receive more than it would have received if the transfer had not been made and the creditor had been paid to the extent provided by Chapter 11. Id. § 547(b)(4)-(5).

The bankruptcy court, ruling on the IRS's motion in its first iteration, noted the pleading requirements of a preferential transfer claim and observed that the complaint must include "(a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date, (ii) name of the debtor/transferor, (iii) name of transferee, and (iv) the amount of the transfer." *In re* Net Pay, No. 1:13-ap-0163, Doc. 13 at 4 (quoting OHC Liquid. Trust v. Credit Suisse First Boston (*In re* Oakwood Homes Corp.), 340 B.R. 510, 521-22 (Bankr. D. Del. 2006)). The court reviewed the trustee's complaint and found

that it failed to state any facts which, accepted as true, would establish a debtor and creditor relationship between Net Pay and the IRS. Id. at 4-5 (quoting OHC Liquid. Trust v. Credit Suisse First Boston (*In re* Oakwood Homes Corp.), 340 B.R. 510, 521-22 (Bankr. D. Del. 2006)). For that reason, the bankruptcy court dismissed the preference action. The trustee reinstated his preference claim in the amended complaint filed after the matter was withdrawn to this court.

The trustee's allegations, though sparse, cure many of the deficiencies cited by the bankruptcy judge and are sufficient to survive a Rule 12(b)(6) motion. First, the trustee alleges that as a result of contractual obligations to remit payment to the IRS on behalf of its clients, and its attendant failure to fulfill those obligations, Net Pay's clients became its creditors.[2] (See Doc. 8 ¶ 12-13 ("[Net Pay] had a contractual obligation to its customers to pay the portion of collected funds attributable to the customers' trust fund obligations to the [IRS].")). Second, the trustee asserts that, as a result of a failure to pay its own tax obligations, Net Pay was also indebted to the IRS at the time of the transfers. (Doc. 8 ¶ 10 ("As a result of [Net Pay's] failure to remit [Net Pay's tax obligations to the IRS], at the time of the 2011 Transfers,

---

[2] The IRS cites to *In re* FirstPay, Inc., 2012 Bankr. LEXIS 4007, *19-20 (Bankr. D. Md. Aug. 30, 2012), as support for its position that Net Pay was merely acting as a delivery vehicle for payments made to the IRS on behalf of its clients and thus never had an interest in the funds flowing through its operating account. This position misapprehends two points: first, FirstPay was decided on stipulated facts and a more developed record; second, and more importantly, the trustee here has argued in the alternative, stating that the funds turned over to the IRS were *either* in satisfaction of its own debt *or* its clients' debts, and that further discovery of IRS records is necessary in order to ascertain the precise nature of those relationships and satisfactions. Hence, FirstPay is inapposite at this juncture.

[the IRS] was a creditor of [Net Pay] to the extent of the amount of [Net Pay's tax obligations].")). Net Pay's bank account activity statement, now appended to the amended complaint, shows various debits made on and after May 2, 2011, and the trustee alleges that these debits represent the individual 2011 Transfers. (Doc. 8 ¶ 8; Doc. 9 Ex. A).

The IRS contends that these amendments still fail to plead "the relationship between [Net Pay], its clients, and the United States for each alleged transfer." (Doc. 6 at 8). Specifically, the IRS challenges the trustee's allegations that the transferred funds were Net Pay's interest in property and that the funds were transferred on behalf or for the benefit of a creditor. (Doc. 11 at 3-6). The court disagrees. The IRS's position misapprehends the nature of the trustee's pleading burden: the trustee need not *prove* that either the IRS or Net Pay's clients were Net Pay's creditors at the time of the allegedly preferential transfers; he need only state facts which, assumed to be true, establish a creditor/debtor relationship. See Santiago, 629 F.3d at 130-31. The trustee has pleaded such facts by alleging that, as a result of its failure to satisfy various obligations, Net Pay's clients and the IRS became its creditors. For purposes of Rule 12(b)(6), the court concludes that the trustee has adequately pled a preferential transfer claim under Section 547. Iqbal, 556 U.S. at 679 (complaint need only offer facts which, assumed to be true, establish a "plausible claim for relief").

The IRS also challenges the timeliness of the preference claims. The trustee may recover only those transfers made within the ninety (90) day period preceding

the filing of the bankruptcy petition. 11 U.S.C. § 547(b)(4). In the matter *sub judice*, the petition was filed on August 2, 2011. Accordingly, the preference period includes only those potentially preferential transfers made on or after May 4, 2011. Citing the operating account activity statement submitted by the trustee, the IRS asserts that many of the transfers at issue were made on May 2 and 3, 2011, and fall outside of the preference period. (See Doc. 9 at 1-11). The trustee concedes this fact (Doc. 10 at 3 n.1) but responds that the relevant date of transfer for purposes of § 547 is the date on which the transfer was honored by the drawee bank. See Barnhill v. Johnson, 503 U.S. 393, 394 (1992) (concluding that the date the drawee bank honors a check is determinative). At this juncture, it is unclear whether the transfers were made by check or other means, or when the drawee bank honored the withdrawal. However, many of the May 2011 transfers fall squarely inside of the preference window, (see Doc. 9 at 11-18), and will proceed regardless of the timeliness of the May 2 and May 3 transfers. Accordingly, the court will not parse the various transfers at this time. Rather, the court concludes that the most appropriate course is to allow the parties to develop a record with respect to the transfer dates and address the issue at summary judgment or at trial. The court will deny the IRS's motion to dismiss the preference action.

**B. Fraudulent Transfers**

In Counts II and III of the amended complaint, the trustee asserts claims for fraudulent transfer pursuant to 11 U.S.C. § 548 and 12 PA. CONS. STAT. § 5104. Such claims can—and in this case, do—take two forms: claims for actual fraud under 11

U.S.C. § 548(a)(1)(A) and 12 PA. CONS. STAT. § 5104(a)(1), and claims for constructive fraud under 11 U.S.C. § 548(a)(1)(B) and 12 PA. CONS. STAT. § 5104(a)(2). The two statutes take similar form for both claims and provide that a trustee may avoid any transfer of an interest of the debtor in property if the debtor: (a) in the case of actual fraud, made a transfer with "actual intent to hinder, delay, or defraud" any creditor, or, (b) in the case of constructive fraud, received less than reasonably equivalent value in exchange for said transfer. 11 U.S.C. § 548(a)(1); 12 PA. CONS. STAT. § 5104(a). Constructive transfer claims under the Bankruptcy Code require the trustee to plead the additional element of insolvency at the time of the challenged transfers. 11 U.S.C. § 548(a)(1)(B)(ii)(I). A review of the amended complaint reveals that the trustee has failed to meet federal pleading standards to support either variation of his fraudulent transfer claim.

Counts II and III of the trustee's amended complaint offer nothing beyond a formulaic recitation of the statutory elements of a fraudulent transfer in support of the trustee's claims. In Count II, for example, the trustee alleges only that Net Pay made the Four Year Transfers, that it did so "with intent to and as part of a scheme to hinder, delay, or defraud some or all of its customers," and that it had insufficient funds to pay its obligations to its customers (i.e., was insolvent) at the time of the

transfers. In Count III, the trustee provides more of the same broad allegations.[3] Indeed, both Counts II and III—beyond the allegation that a debt was owed and satisfied—are comprised of nothing more than a verbatim recitation of the statutory elements of a fraudulent transfer claim. 11 U.S.C. § 548(a)(1); 12 PA. CONS. STAT. § 5104(a). The trustee has pled no facts which, deemed true, would prove that Net Pay's actions were intended to hinder, delay, or defraud its customers or that it received less than reasonably equivalent value in exchange for the transfers. See Twombly, 550 U.S. at 554 ("A plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and *a formulaic recitation of the elements of a cause of action will not do* . . ." (emphasis added)). The trustee's complaint is entirely devoid of factual support and fails to satisfy even the most liberal notice pleading standards. This pleading failure compels dismissal of the fraudulent transfer claims.

---

[3] The remainder of the trustee's allegations in each count are legal conclusions which will be disregarded by the court. (See, e.g., Doc. 8 ¶ 30 ("The Four Year Transfers were fraudulent . . . in violation of 12 PA. CONS. STAT. § 5104."); ¶ 34 ("[Net Pay's] defrauded customers have the ability to void the Four Year Transfers pursuant to . . . 12 PA. CONS. STAT. §§ 5104, 5105, 5107, and 5108."); ¶ 35 ("The trustee is entitled to avoid the Four Year Transfers pursuant to 12 PA. CONS. STAT. §§ 5104, 5105, and 11 U.S.C. § 544."); ¶ 50 ("[Net Pay's] defrauded customers have the ability to void the Two Year Transfers pursuant to . . . 12 PA. CONS. STAT. §§ 5104, 5105, 5107, and 5108."); ¶ 52 ("The trustee is entitled to avoid the Two Year Transfers for the benefit of [Net Pay's] bankruptcy estate pursuant to 11 U.S.C. § 548."). These legal conclusions are not entitled to an assumption of truth. See Image Masters, Inc. v. Chase Home Fin., 489 B.R. 375, 386 (E.D. Pa. Mar. 11, 2013) (court must disregard allegations that "are no more than conclusions . . . [and] are not entitled to the assumption of truth" (quoting Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011))).

The only facts contained in the trustee's complaint—and the reason his preferential transfer claim may proceed—are that transfers were made in satisfaction of an antecedent debt. (See Doc. 8 ¶¶ 22, 40 (Net Pay had contractual obligations to pay its customers' debts to the IRS); ¶¶ 24, 42 (Net Pay made the Two and Four Year Transfers in satisfaction of those outstanding customer obligations)). Under the Bankruptcy Code, the satisfaction of a debtor's obligations constitutes reasonably equivalent value for purposes of constructive fraudulent transfer claims. 11 U.S.C. § 548(d)(2)(A) (defining "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor"); see also Image Masters, Inc., 489 B.R. at 389-90 (trustee's claim under § 548 dismissed when each transfer resulted in a reduction in liability or debt for the debtor). Consequently, the trustee's blanket allegation *sub judice* that Net Pay did not receive reasonably equivalent value in exchange for its transfers is belied by the trustee's own admissions in Count II that the transfers were made in satisfaction of Net Pay's debts to its customers and the IRS. For this reason, the court's dismissal of Net Pay's fraudulent transfer claim shall be with prejudice, as leave to amend would be futile given the admissions in the trustee's present pleading. See Phillips, 515 F.3d at 245 (when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile") (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)).

## V. Conclusion

Based on the foregoing, the court will grant in part and deny in part the IRS's motion (Doc. 5) to dismiss Net Pay's adversary complaint (Doc. 8), as fully articulated herein. An appropriate order follows.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: May 12, 2014