## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARKIAN SLOBODIAN, as Trustee for the Bankruptcy Estate of Net Pay Solutions, Inc., d/b/a Net Pay Payroll Services,** | : : : : : | **CIVIL ACTION NO. 1:13-CV-2677**<br><br>**(Chief Judge Conner)** |
| **Plaintiff** | : : | |
| **v.** | : : | |
| **THE UNITED STATES OF AMERICA, through the Internal Revenue Service,** | : : : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Presently before the court is an adversarial proceeding withdrawn from the United States Bankruptcy Court for the Middle District of Pennsylvania, wherein debtor Net Pay Solutions, Inc., d/b/a Net Pay Payroll Services, ("Net Pay"), through its bankruptcy trustee ("trustee"), seeks to avoid certain purportedly preferential transfers made to the United States of America, specifically the Internal Revenue Service ("IRS"), during the prepetition preference period. The United States and the trustee both moved for summary judgment. (Docs. 24, 29). For the reasons that follow, the court will grant the United States' motion (Doc. 24), deny the trustee's motion (Doc. 29), and enter summary judgment in favor of the United States.

I.   **Factual Background[1] and Procedural History**

The facts undergirding the parties' opposing motions are largely undisputed. On August 2, 2011, Ney Pay filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code. (Doc. 25 ¶ 1; Doc. 30 ¶ 1). Prior to declaring bankruptcy, Net Pay operated as a payroll service provider. (Doc. 25 ¶ 2; Doc. 30 ¶ 2). In that role, Net Pay obtained funds from its customers' bank accounts and turned those funds over to customers' employees as well as the IRS and other taxing authorities. (Doc. 25 ¶ 2; Doc. 30 ¶ 2). Net Pay's relationship with each customer was governed by a payroll services agreement. (Doc. 25 ¶ 3; Doc. 30 ¶ 3). The agreement identifies Net Pay and its customers as "independent contractors" and expressly disclaims "any relationship of employment, agency, joint venture, partnership, or any other fiduciary relationship of any kind." (Doc. 30 ¶ 3; Doc. 35 ¶ 3). The agreement obligated Net Pay to determine taxes and wages owed by each customer, transfer the necessary funds into Net Pay's operating account, and remit those funds to customers' employees, the United States, and other taxing authorities. (Doc. 25 ¶ 4; Doc. 30 ¶ 4). Net Pay maintained a bank account with Sovereign Bank, N.A., for purposes of making requisite payments. (See Doc. 30 ¶ 5; Doc. 35 ¶ 5).

---

[1] Local Rule 56.1 provides that "[a] motion for summary judgment filed pursuant to FED. R. CIV. P. 56 shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." L.R. 56.1. A party opposing a motion for summary judgment shall file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement of material facts and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual information contained herein derives from the parties' statements of material facts. (See Docs. 25, 27, 30, 35). To the extent that facts are undisputed or supported by uncontroverted record evidence, the court cites directly to the parties' statements of material facts.

On May 5, 2011, Net Pay made five electronic transfers to the United States in the amounts of $32,297, $5,338, $1,143, $353, and $281 on behalf of customers. (Doc. 25 ¶ 10; Doc. 30 ¶ 8).[2] Net Pay transferred the amounts as follows: $32,297 on behalf of Altus Capital Partner, Inc. ("Altus"); $5,338 on behalf of Healthcare Systems Connections, Inc.; and $1,143 on behalf of Project Services, LLC. (Doc. 30 ¶¶ 9, 12, 15; Doc. 35 ¶¶ 9, 12, 15[3]). Neither party's statement of facts attributes the $353 and $281 transfers to a customer of Net Pay, nor does either party's brief explain for whose benefit these transfers were made. (See generally Docs. 25, 30).

IRS Revenue Office Advisor Michael Connelly explained that, per agency policy, payments made to the IRS are applied first to non-trust fund tax obligations. (Connelly Decl. ¶ 8 (Oct. 29, 2014), ECF No. 24-2). According to the United States, Altus satisfied its non-trust fund obligations before May 5, 2011; thus, the entire

---

[2] The record also reflects that Net Pay made over 100 electronic transfers on May 3, 2011, and several additional transfers on May 4, 2011. (Doc. 25 ¶¶ 8-9; Doc. 27 ¶¶ 8-9). The trustee's amended complaint (Doc. 8) seeks to avoid these transfers. The United States first challenged the timeliness of the May 3 and May 4 transfers in its Rule 12(b)(6) motion, contending that the transfers fell outside of the ninety (90) day preference period. (See Doc. 5 at 1-2). In an abundance of caution, the court allowed the claims to proceed, concluding that it was unclear when the transfers were completed for purposes of determining timeliness. See Slobodian v. United States of America ex rel. Internal Revenue Service, No. 1:13-CV-2677, 2014 WL 2041815, at *4 (M.D. Pa. May 12, 2014). The trustee now concedes that Net Pay transferred the funds electronically such that the transfers were complete on May 3 and May 4, 2011, placing them beyond the scope of this preference action. (See Doc. 28 at 4). Given the trustee's concession, the court deems any claims pertaining to the May 3 and May 4, 2011 transfers to be withdrawn.

[3] The United States objects to paragraph 15 of the trustee's statement of material facts to the extent the trustee includes additional facts regarding the content of its contract with Project Services, LLC. (See Doc. 35 ¶ 15). Nonetheless, the United States admits that it received a transfer of $1,143. (See id.)

3

$32,297 transferred to the United States on May 5, 2011, was applied to the trust fund portion of Altus's tax obligations.[4] (See Doc. 25 ¶ 13). The record is silent with regard to which portion of the customers' employment tax liabilities were satisfied by the four (4) remaining transfers. (See generally Docs. 25, 30). At the time the challenged transfers were made, Net Pay's obligations substantially exceeded its assets. (See Doc. 30 ¶ 18; Doc. 35 ¶ 18). Neither party disputes that the value of the transfers to the United States substantially exceeds any distribution Net Pay's customers could receive through their respective bankruptcy claims. (Doc. 30 ¶ 24; Doc. 35 ¶ 24). These five transfers are the subject of the trustee's preferential transfer claim.

On June 24, 2013, Net Pay, through its bankruptcy trustee, commenced the above-captioned adversary proceeding against the United States, through the IRS, seeking recovery of preferential transfers pursuant to 11 U.S.C. § 547 (Count I) and fraudulent transfers pursuant to 11 U.S.C. § 548 (Count II) and various provisions of Pennsylvania law (Count III). See In re Net Pay, No. 1:13-AP-163, Doc. 1 (June 24, 2013). The bankruptcy court thereafter issued an opinion holding that the United States Supreme Court's decision in Stern v. Marshall, 131 S. Ct. 2594 (2011) divested bankruptcy courts of authority to enter final judgments on the trustee's fraudulent

---

[4] The trustee "denies that . . . the entire $32,297 was applied to trust fund taxes" but cites no evidence supporting his denial or refuting the United States' supporting evidence as required by the Local Rules. See L.R. 56.1 ("Statements of material facts . . . in opposition to[] a motion shall include references to the parts of the record that support the statements."); id. ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.").

transfer claims. _In re_ Net Pay Solutions, Inc., No. 1:13-AP-163, 2013 WL 5550207, at *3 (Bankr. M.D. Pa. Oct. 7, 2013). The bankruptcy court also determined that the trustee's preferential transfer claim could not survive Rule 12(b)(6) scrutiny and dismissed Count I with leave to amend. See id. at *2.

The trustee thereafter filed an amended complaint contemporaneously with a motion to withdraw the reference of the adversary proceeding. See _In re_ Net Pay, No. 1:13-AP-0163, Docs. 17-18. The bankruptcy court transmitted the motion to withdraw to this court, (Doc. 1), and on November 7, 2013, the trustee filed a certificate of concurrence, (Doc. 3), indicating that the United States agreed to withdrawal of the reference. On November 8, 2013, the undersigned issued an order (Doc. 4) granting the trustee's motion and withdrawing the reference of the above-captioned adversary proceeding to the bankruptcy court.

The United States thereafter moved to dismiss the amended adversary complaint, testing the sufficiency of each of the trustee's claims. (See Doc. 5). On May 12, 2014, the court issued an opinion and order granting in part and denying in part the United States' motion. See Slobodian, 2014 WL 2041815. The court first dismissed the trustee's fraudulent transfer claims in Counts II and III, observing that the amended complaint offered nothing more than a "formulaic recitation of the elements" of those claims. See id. at *5. Regarding the trustee's preference claim, the court acknowledged the timeliness concerns raised by the United States with regard to the bulk of the contested transactions, but ultimately declined to parse the various transfers. The court concluded instead that the appropriate course was to allow the trustee to develop the record with respect to transfer dates.

Id. at *4.  Following a period of discovery, the parties filed the instant cross-motions

(Docs. 24, 29) for summary judgment.  Both motions are fully and timely briefed[5]

and ripe for disposition.

## II.  <u>Standard of Review</u>

Through summary adjudication, the court may dispose of those claims that

do not present a "genuine dispute as to any material fact" and for which a jury trial

would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of

proof tasks the non-moving party to come forth with "affirmative evidence, beyond

the allegations of the pleadings," in support of its right to relief.  <u>Pappas v. City of

Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); <u>see also</u> <u>Celotex Corp. v. Catrett</u>,

477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to

sustain a judgment in favor of the non-moving party on the claims.  <u>See</u> <u>Anderson</u>,

477 U.S. at 250-57; <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,

587-89 (1986).  Only if this threshold is met may the cause of action proceed.

<u>Pappas</u>, 331 F. Supp. 2d at 315.

---

[5] The trustee asserts that its motion for summary judgment should be
deemed unopposed and its statement of facts admitted because the United States
did not file an opposition brief within twenty-one (21) days of service of the trustee's
motion and supporting brief.  (Doc. 36 at 3-4).  The trustee's argument disregards
Federal Rule of Civil Procedure 6(d), which adds three (3) days to the twenty-one
(21) day response period when service of the opening brief is made electronically.
<u>See</u> L.R. 7.6 (stating that a brief in opposition to a motion for summary judgment
and responsive statement of facts "shall be filed within twenty-one (21) days after
service of the movant's brief"); FED. R. CIV. P. 6(d) ("When a party may or must act
within a specified time after service and service is made under Rule 5(b)(2)(C), (D),
(E), or (F), 3 days are added after the period would otherwise expired under Rule
6(a).").  The United States' brief is timely pursuant to both the Federal Rules of
Civil Procedure and the Local Rules of Court.

The court is permitted to resolve cross-motions for summary judgment concurrently. InterBusiness Bank, N.A. v. First Nat'l Bank of Mifflintown, 318 F. Supp. 2d 230, 235 (M.D. Pa. 2004); see also Irvin v. United Mine Workers of Am. Health & Ret. Funds, No. 2:05-CV-1072, 2007 WL 539646, at *1 (W.D. Pa. Feb. 15, 2007); 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2014). When doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion. FED. R. CIV. P. 56; Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990); see also Strategic Learning, Inc. v. Wentz, No. 1:05-CV-0467, 2006 WL 3437531, at *4 (M.D. Pa. Nov. 29, 2006).

## III.   **Discussion**

The trustee seeks to recover the five (5) challenged transfers pursuant to Section 547 of the Bankruptcy Code. Section 547 permits a bankruptcy trustee to recover certain preferential transfers made by a debtor to a creditor in the ninety (90) day period preceding the bankruptcy petition. See 11 U.S.C. § 547(b). Section 547 is designed "to facilitate 'the prime bankruptcy policy of equality of distribution among creditors of the debtor.'" In re Kiwi Int'l Air Lines, Inc., 344 F.3d 311, 316 (3d Cir. 2003) (citing 2 COLLIER ON BANKRUPTCY ¶ 547.01 (15th ed. rev. 2003)). It aims to "prevent preferences of certain creditors" and fairly distribute assets among all of a debtor's creditors, "not merely those that are favored." Mellon Bank, N.A. v. Metro Commc'ns, Inc., 945 F.2d 635, 641 (3d Cir. 1991) (citing Kapela v. Newman, 649 F.2d 887 (1st Cir. 1981)).

In order to recover a purportedly preferential transfer, a trustee must demonstrate a "transfer of an interest of the debtor in property . . . to or for the benefit of a creditor . . . for or on account of an antecedent debt owed by the debtor . . . made while the debtor was insolvent." 11 U.S.C. § 547(b)(1)-(3).  A trustee can avoid only those transfers made within ninety (90) days after the filing date of the petition.  See id. § 547(b)(4)(A).  To succeed in avoiding a transfer, the trustee also must show that the transfer enabled the benefitted creditor to receive more than the creditor otherwise would have received had the transfer not been made and the creditor had been paid only to the extent provided by the Code.  Id. § 547(b)(5).

As a threshold matter, several elements of the trustee's preference claim are not genuinely in dispute.  For example, the trustee asserts that the subject transfers were made while Net Pay was insolvent, (see Doc. 30 ¶ 18), a requisite element of his preference action, and the United States does not dispute that fact, (see Doc. 35 ¶ 18).  Nor does the United States respond to the trustee's assertion of insolvency in its brief in opposition to the trustee's motion.  (See Doc. 34).  Similarly, the trustee states—and the United States admits—that the transactions benefitted Net Pay's clients and allowed them to receive more than they would have if the clients were limited to seeking payment from the bankruptcy trustee, (see Doc. 30 ¶¶ 16, 24; Doc. 35 ¶¶16, 24), another element of a successful preference claim.  The record evidence cited by the trustee supports these facts, and the court thus deems each of these elements to be satisfied for purposes of Rule 56.  See L.R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed

to be admitted unless controverted by the statement required to be served by the opposing party.").

The trustee's preference claim instead rises or falls on two discrete legal inquiries, each of which is disputed by the parties: *first*, whether the court may aggregate the separate transfers to the United States in order to satisfy the $5,850 *de minimis* preferential transfer threshold established by Section 547(c)(9); and *second*, whether the funds held in Net Pay's operating account for distribution on behalf of its customers constitute the "debtor's interest in property" for purposes of a preference action. The court resolves each inquiry *seriatim*.

A.   **The *De Minimis* Transfer Defense**

Section 547(c)(9) prohibits a bankruptcy trustee from avoiding a transfer when its value does not exceed $5,850. 11 U.S.C. § 547(c)(9) (amended 2013).[6] The United States requests summary judgment in its favor as to four of the transfers, asserting that only the Altus transfer exceeds this *de minimis* threshold. (Doc. 26 at 8-9). It asserts that each transfer was made pursuant to a separate contract with different clients and in satisfaction of independent debts, precluding aggregation of their respective values. (See id.) The trustee concedes that, separately, four of the transfers fall below the threshold. (See Doc. 28 at 4-5). Nonetheless, he encourages

---

[6] Effective April 1, 2013, and applicable to cases commenced on or after that date, the dollar amount of this subsection was amended to increase the threshold from $5,850 to $6,225. See Revision of Certain Dollar Amounts in the Bankruptcy Code Prescribed Under Section 104(a) of the Code, 78 Fed. Reg. 12089, 12090 (Feb. 12, 2013); also 11 U.S.C. § 104(b). This action commenced before the amendment became effective, and accordingly, the $5,850 threshold applies. See Revision of Certain Dollar Amounts in the Bankruptcy Code Prescribed Under Section 104(A) of the Code, 75 Fed. Reg. 8747, 8748 (Feb. 25, 2010).

the court to aggregate their values to satisfy the threshold because all transfers were made to the same creditor.  (See id.)

The parties' arguments focus on Section 547(c)(9)'s language prohibiting a trustee from avoiding "a transfer . . . if . . . *the aggregate value* of all property that constitutes or is affected by such transfer" is less than $5,850.  11 U.S.C. § 547(c)(9) (emphasis added).  The trustee asserts that the aggregate of the five challenged transfers far exceeds the statutory threshold amount, defeating any *de minimis* transfer defense.  (See Doc. 28 at 4-5).  In support of this argument, the trustee directs the court to In re Carter, 506 B.R. 83 (Bankr. D. Ariz. 2014), wherein the court opined that the statute's language "is internally contradictory or at best ambiguous," describing what it perceived to be an irreconcilable discrepancy between its use of the term "aggregate," which "implies a summation of various transfers," and the phrase "such transfer," which "implies the defense should be applied on a payment by payment basis."  Id. at 87.  The court held broadly that "the aggregate of *all transfers challenged in a preference action* must be less than [the statutory threshold] in order for the defense to apply."  Id. (emphasis added).  At least one other bankruptcy court has allowed aggregation pursuant to Section 547(c)(9) in the case of prepetition transfers to a single creditor in satisfaction of a single debt.  See In re Transcontinental Refrigerated Lines, Inc., 438 B.R. 520, 522 (Bankr. M.D. Pa. 2010) (interpreting "'transfer' to include the plural 'transfers'" in permitting aggregation of three separate transfers to a single creditor in satisfaction of a single debt).

Conversely, the United States directs the court to several decisions supporting the proposition that transfers should not be aggregated if they are made in satisfaction of separate debts or to separate creditors.  It cites, for example, *In re* Pickens, No. 06-1120, 2007 WL 1650140 (Bankr. N.D. Iowa June 4, 2007), where the court adopted a "transactional approach" in deciding whether a prepetition transfer of a security interest could be aggregated with a separate prepetition cash payment to a single creditor for *de minimis* threshold purposes.  The court concluded that the proper inquiry is whether the transfers are "transactionally related" to one another.  Id. at *12.  Because disputes of fact remained as to that inquiry, the court denied the trustee's Rule 56 motion.  See id.  The bankruptcy court's decision in *In re* Nelson, 419 B.R. 338 (Bankr. D. Ky. Nov. 13, 2009), also supports the United States' position.  In *In re* Nelson, the court considered whether Section 547(c)(8)—a related small transfers provision in the consumer debt context—permitted aggregation of four prepetition payments to four separate creditors toward four separate debts via a single wage garnishment order.  The court held that payments for the benefit of separate creditors "are to be considered individually when applying § 547(c)(8)."  Id. at 340.  The only Circuit Court of Appeals to address the issue also did so in the context of Section 547(c)(8), concluding that payments to a single creditor on a single debt pursuant to a wage garnishment order may be aggregated.  See *In re* Hailes, 77 F.3d 873, 873-75 (5th Cir. 1996) (concluding that "the aggregate value of several transfers should be considered to determine whether *a creditor* has received $600 in value." (emphasis added)).

11

The Third Circuit has not spoken on the meaning of "aggregate" within the margins of Section 547(c)(8) or (c)(9).  Hence, the court's discussion is guided by an examination of the case law cited *supra* and the policies underlying Section 547 and the Bankruptcy Code generally.  Ultimately, the court agrees with the United States and the several bankruptcy courts that have held that the *de minimis* transfer defense in Section 547(c)(9) permits aggregation of only those transfers which are "transactionally related" to the same debt.  See *In re* Pickens, 2007 WL 1650140, at *5; also *In re* Nelson, 419 B.R. at 340.  To hold otherwise would render inclusion of an aggregation exception to the *de minimis* transfer defense a legal nullity.  In other words, if Congress intended every transfer challenged in a preference action to be aggregated for purposes of Section 547(c)(9) as the trustee suggests, inclusion of the word "aggregate" in the provision would be entirely superfluous.

The court finds *In re* Carter to be distinguishable.  *In re Carter* involved multiple payments by a debtor to a single creditor on *a single debt*.  In contrast, each transfer challenged *sub judice* was made in satisfaction of an independent debt, pursuant to separate contracts, for the benefit of individual Net Pay clients, none bearing a transactional relationship to the other.  Given this important factual distinction, the court holds that a transactional approach best furthers the policies of the Bankruptcy Code.  Cf. *In re* Bay Area Glass, Inc., 454 B.R. 86, 92 (B.A.P. 9th Cir. 2011) (acknowledging "dearth of decisional analysis" surrounding Section 547(c)(9) but comparing statute to a related provision and holding that "§ 547(c)(9) clearly and unambiguously expresses Congress' intent to prevent trustees from avoiding transfers" of a specified amount even though the transfers may otherwise

12

be preferential).[7]  The court holds that the payments made to the United States in the amounts of $5,338, $1,143, $353, and $281 are separate and unrelated transactions in satisfaction of independent antecedent debts which may not be aggregated for purposes of the *de minimis* transfer threshold of Section 547(c)(9). Accordingly, the court will grant the United States' motion for summary judgment as to these four preference claims.

### B.  The "Debtor's Interest In Property" Requirement

The balance of the court's analysis focuses exclusively on the prepetition transfer of $32,297 to the United States on behalf of Altus.  Specifically, the court must determine whether the $32,297 payment constitutes a "transfer of an interest of the debtor in property."  11 U.S.C. § 547(b).  The trustee does not dispute that the avoidance power of Section 547(b) is "limited to transfer of 'property of the debtor.'" Begier v. Internal Revenue Service, 496 U.S. 53, 58 (1990).  In his motion, the trustee simply asserts that the payment in question was transferred "from Debtor's own operating account," thus satisfying the statute's "debtor's interest" requirement. (See Doc. 33 at 6).  The trustee otherwise offers no record evidence in support of his

---

[7] The court also notes its disagreement with the Carter court's conclusion that Section 547(c)(9) is incapable of a construction that does not produce internal inconsistencies.  See In re Carter, 506 B.R. at 87.  The Carter court observed that merely including the term "aggregate" in the same provision as the singular phrase "such transfer" creates an inconsistency which must be resolved in the bankruptcy trustee's favor.  Id.  This observation is myopic.  To the contrary, the statute clearly contemplates a single transfer comprised of more than one type of property; it then allows the value of all types of property comprising that single transfer to be aggregated.  See 11 U.S.C. § 547(c)(9) (referring to the "aggregate value of *all property that constitutes* or is affected by *such transfer*" (emphasis added)); also In re Pickens, 2007 WL 1650140, at *12 (reaching similar interpretation in concluding that a security interest in property and cash may be aggregated if transactionally related to one another).

position that the funds transferred to the United States on behalf of Net Pay's client belong not to the client or to the United States but to Net Pay's bankruptcy estate. (See id.)

The United States maintains that Net Pay never possessed an interest in the property for preference action purposes.  According to the United States, Net Pay held the transferred funds in trust, to be transmitted to the United States pursuant to Net Pay's payroll service agreement with Altus, and thus Net Pay never had an interest in the property.  The United States relies on two alternative but related theories in support of its position.  First, citing In re FirstPay, Inc., No. 03-30102PM, 2012 WL 3778952 (Bankr. D. Md. Aug. 30, 2012), the United States argues that the funds were held in a resulting trust for the United States under Pennsylvania law. (Doc. 26 at 11-14).  The United States asserts alternatively that the funds were held in a special statutory trust for the United States pursuant to 26 U.S.C. § 7501(a) and the United States Supreme Court's decision in Begier.  (See id. at 15-17).  The court agrees with the United States that Begier controls the instant dispute.

Pursuant to 26 U.S.C. § 7501(a): "Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States."  26 U.S.C. § 7501(a).  The special trust applies to Social Security, Medicare, and income taxes that Congress requires employers to withhold from employees' paychecks, commonly referred to as "trust-fund taxes."  See Begier, 496 U.S. at 54 (citing Slodov v. United States, 436 U.S. 238, 241 (1978)).  The Begier Court closely examined the intersection of the special

14

statutory trust and preferential transfers, ultimately concluding that transfers to the IRS of amounts held in such a trust are not avoidable in bankruptcy.

The facts of <u>Begier</u> are straightforward.  Debtor American International Airways, Inc. ("AIA"), collected trust fund taxes directly from its employees for payment to the IRS.  <u>Begier</u>, 496 U.S. at 55-56.  When AIA fell behind on payments to the IRS, the IRS ordered it to establish a separate bank account for deposit and collection of future trust fund taxes withheld from employee paychecks.  <u>See</u> <u>id.</u> AIA partially complied, creating a separate account and depositing some trust fund taxes therein, but nonetheless continued to commingle other withheld trust fund taxes in its general operating account.  <u>See</u> <u>id.</u>  During the period preceding its bankruptcy petition, AIA transferred funds to the IRS in satisfaction of its trust fund tax obligations from both the separately ordered account and its general operating account.  <u>See</u> <u>id.</u>  The trustee thereafter filed an adversary action against the IRS, seeking to avoid as preferential transfers all funds transferred to the IRS during the prepetition period.  <u>See</u> <u>id.</u>

The bankruptcy court held that the funds transferred from the special trust account were not avoidable by the trustee because the same were held in trust for the United States, but permitted the trustee to avoid those transfers made out of AIA's general operating account, concluding that "only where a tax trust fund is actually established by the debtor" are withheld taxes held in special trust for the government.  <u>See</u> <u>In re</u> <u>Am. Int'l Airways, Inc.</u>, 83 B.R. 324, 329 (Bankr. E.D. Pa. 1988).  The district court affirmed by order, and the government appealed to the Third Circuit Court of Appeals.  <u>See</u> <u>Begier v. Internal Revenue Service</u>, 878 F.2d

762 (3d Cir. 1989).  The Third Circuit reversed, concluding that *any* prepetition payment of trust fund taxes constitutes a payment of funds that are not "the debtor's interest in property" and as such are not avoidable.  See id. at 771.  The Supreme Court granted the trustee's petition for *certiorari*.

In a unanimous decision written by Justice Marshall with Justice Scalia concurring, the Court affirmed the Third Circuit's decision.  Beginning with the established principle that a "debtor does not own an equitable interest in property he holds in trust for another," the Court enumerated a two-fold inquiry for deciding whether the transferred funds may be avoided: *first*, whether a special trust for the IRS was created in the first instance and, *second*, after answering that threshold inquiry in the affirmative, whether the assets the debtor used to pay the IRS were assets belonging to that trust.  See Begier, 496 U.S. at 57-67.  The Supreme Court largely tracked the Third Circuit's analysis, concluding that AIA created a special trust for the benefit of United States in the instant it withheld the funds from its employees' paychecks.  See id. at 60-62.  The Court observed that courts should apply "reasonable assumptions" when tracing transferred Section 7501 funds, and held that one such assumption is "that any voluntary prepetition payment of trust-fund taxes out of the debtor's assets is not a transfer of the debtor's property."  Id. at 62-67.  The Court thus affirmed the Third Circuit's holding that AIA's trustee could not avoid AIA's prepetition transfer of trust fund taxes to the IRS.  Id. at 67.

The trustee contends that Begier is inapposite, emphasizing that the case involved an employer that collected and paid its taxes directly, while the instant matter involves a third-party payroll service provider that collected trust fund taxes

16

from its clients and transferred them to the United States.  (<u>See</u> Doc. 28 at 8-9; Doc. 33 at 8-10).  The trustee argues that <u>Begier</u> should be limited to its particular facts,[8] suggesting that the funds lost any protected trust fund status when they were removed from the employer's account and commingled in a third party's operating account.  (<u>See</u> Doc. 28 at 8-9).  In the court's view, the trustee's proposed distinction is one without a difference.  The bankruptcy policies and *ratio decidendi* underlying

---

[8] The trustee cites <u>*In re* Brooke Corp.</u>, No. 11-2380, 2012 WL 2120736 (D. Kan. 2012), for his assertion that "courts have interpreted <u>Begier</u> to be a narrow holding that should be limited strictly to the facts before the Court in that case." (Doc. 28 at 8).  <u>*In re* Brooke</u>, however, merely distinguished the <u>Begier</u> decision from the case before it, which involved a statutory trust created under *state* law for the purpose of collecting insurance premiums.  <u>See</u> <u>*In re* Brooke Corp.</u>, 2012 WL2120736 at *2-4. The court noted that <u>Begier</u> was decided in the unique context of the Section 7501 trust and concluded that its relaxed tracing requirements were inapplicable to the statutory trust before it.  <u>See id.</u> at *3-4.  Assuming *arguendo* that <u>Begier</u> has been limited "strictly to the facts before the Court in that case" as the trustee suggests, the facts *sub judice* are virtually indistinguishable from the factual predicate of <u>Begier</u>.  The trustee's assertion that this court should reject <u>Begier</u> outright is meritless.

Justice Marshall's opinion in <u>Begier</u> are directly applicable to, and dispositive of, the present dispute.[9]

To the extent the trustee posits that this matter is distinguishable from <u>Begier</u> because the funds were transferred first to a third-party payroll servicer before being paid to the United States, the court disagrees.  Per Section 7501(a), the funds in question obtained trust fund status the moment Net Pay withheld them from the paychecks distributed to its clients' employees.  <u>See</u> 26 U.S.C. § 7501(a); <u>see</u> <u>also</u> <u>Begier</u>, 496 U.S. at 60-62.  The trustee offers no explanation for his rejection of this principle, other than mere supposition that utilizing a payroll servicer taints the otherwise protected status of withheld trust fund taxes.  The court's research reveals no authority supporting the position that channeling trust fund taxes through a third-party payroll servicer dilutes the protections of the Section 7501 trust.  Indeed, to so hold would run afoul of Justice Marshall's observation that bankruptcy policy generally prohibits trustees from avoiding transfers of funds that

---

[9] The only other court to address similar facts opined summarily that the <u>Begier</u> analysis and Section 7501 statutory special trust do not apply when amounts withheld for trust fund taxes are filtered through a third-party payroll service before being turned over to the IRS.  <u>See</u> <u>In re</u> <u>FirstPay, Inc.</u>, No. 03-30102PM, 2012 WL 3778952, at *5 (Bankr. D. Md. Aug. 30, 2012) ("FirstPay was not holding the subject funds in a statutory trust for the IRS pursuant to 26 U.S.C. § 7501, as the funds were not collected or withheld by FirstPay to meet its own trust-fund tax obligations.").  Significantly, the bankruptcy court provided no substantive explanation for rejecting the Section 7501 trust in third-party payroll circumstances before turning to a state law analysis and concluding that the funds were nonetheless held in a common law resulting trust under Maryland law.  <u>See</u> <u>id.</u> at *5-8 (concluding that the payroll service provider "was . . . only a delivery vehicle for the payments it made to the IRS, lacking any equitable interest in the funds entrusted to it with which the payments were made").  Accordingly, the case is of little precedential value to the matter <i>sub judice.</i>  <u>Cf.</u> <u>In re</u> First Pay, 773 F.3d 583 (4th Cir. 2014) (affirming application of state law resulting trust without addressing whether a Section 7501 trust may also apply under the circumstances).

the debtor held for another.  See Begier, 496 U.S. at 59 ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate' . . . for purposes of § 547(b).").  Further, the trustee's proposal is wholly inconsistent with the Supreme Court's rejection of a segregation requirement.  See id. at 60-62 ("[T]here is no general requirement that the withheld sums be segregated from the employer's general funds." (quoting Slodov, 436 U.S. at 243)).

As to the central issue before the court, the record unequivocally answers both Begier inquiries in the affirmative.  The United States' evidence demonstrates that Net Pay collected funds from Altus pursuant to its payroll services agreement and withheld both trust fund and non-trust fund taxes from the collected funds before ultimately distributing employee paychecks.  (Doc. 25 ¶¶ 11-13; Doc. 27 ¶ 13; see also Doc. 30 ¶¶ 9-11, 16; Doc. 35 ¶¶ 9-11, 16).  Specifically, it establishes—and the trustee does not dispute—that $32,297 was withdrawn from Altus's bank account on April 26, 2011, and that Net Pay voluntarily transferred that same amount to the United States on May 5, 2011.  (See Doc. 33 ¶¶ 8-9, 11; Doc. 35 ¶¶ 8-9, 11).

This evidence notwithstanding, the trustee challenges the United States' position that the entire amount was applied to trust fund tax obligations, asserting that "approximately $6,527.90" of the payment on Altus's behalf was "clearly marked for employer, non-trust fund tax obligations." (See Doc. 33 at 6 (citing Doc. 24-3, Gov't Ex. 107 at 22-23)).  In support of this theory, the trustee cites to a Net Pay payroll summary attached to Altus's proof of claim in the bankruptcy court.  (See id.)  As a threshold matter, the trustee's argument concedes that at least $25,769.90

*was* applied to Altus's trust fund tax obligation.  (See id.; see also Doc. 27 ¶ 13 ("Of the $32,297.49 paid to [the IRS], $25,769.59 *was applied to employee withholding taxes . . . .*" (emphasis added))).  Per Begier, that portion of the $32,297 that the trustee concedes fell within the scope of Section 7501 is not avoidable.  In any event, the trustee's evidence does not create a genuine dispute as to whether the entire payment was applied to Altus's trust fund tax obligations.

The cited payroll summary, viewed in the light most favorable to the trustee, establishes only that Altus generated $25,769.90 in trust fund taxes and $6,527.90 in non-trust fund taxes during the relevant period.  (See Doc. 24-3, Gov't Ex. 107 at 22). It does not identify what portion of Altus's non-trust fund and trust fund tax obligations were outstanding at the time and is silent with respect to the manner in which the IRS applied the $32,297 payment.  (See id.)  Moreover, it does not refute the United States' otherwise uncontroverted evidence that the IRS *applied the entire sum of $32,297 towards Altus's trust fund tax obligations*.  Michael Connelly, IRS Revenue Office Advisor, stated in his declaration that: (1) for the relevant tax year, Altus owed non-trust fund taxes in the amount of $26,982.50, and that (2) per IRS policy, payments are first applied to non-trust fund taxes.  (See Connelly Decl. ¶¶ 7-8).  An IRS account transcript for Altus during the relevant quarter reveals that, at the time of the May 5, 2011, transfer, Altus had fully satisfied its non-trust fund tax obligations.  (Doc. 24-3, Gov't Ex. 106 at 1).  Per longstanding IRS policy, the $32,297 payment received by the IRS on May 5, 2011, was applied in its entirety to Altus's trust fund tax obligations.  (See Doc. 25 ¶¶ 11-13); see also INTERNAL REVENUE MANUAL, 1.2.14.1.3, ¶ 10 (June 9, 2003) ("To the extent partial payments

exceed the nontrust fund portion of the tax liability, they are deemed to be applied against the trust fund portion of the tax liability. . . .").  The court notes with interest that the trustee has elected to forego any response to the United States' proof and argument with respect to this issue.  (See generally Doc. 28 at 4-13; Doc. 36 at 4-7).

The instant Rule 56 record presents no genuine dispute with regard to the manner in which the $32,297 payment was applied.  The trustee has not shown that Net Pay possessed an interest in the funds transferred to the IRS for purposes of avoiding the challenged transfer.  Further, the United States has met its burden of proving that the funds at issue were Section 7501 trust fund taxes and were paid by Net Pay voluntarily in satisfaction of its clients' trust fund tax obligations.  Pursuant to Begier, the entire transfer of $32,297 is unavoidable.

## IV.    Conclusion

For the reasons stated herein, the court will grant the United States' motion (Doc. 24) and deny the trustee's motion (Doc. 29) in their respective entireties.  An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:       June 29, 2015